IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ATHENS-CLARKE COUNTY UNIFIED GOVERNMENT, *by and through Nancy Denson, Chair of the Commission and Mayor, Athens-Clarke County Unified Government, Georgia;* <br> AUGUSTA, GEORGIA, *by and through Deke Copenhaver, Chair of the Commission and Mayor, Augusta, Georgia;* <br> BUTTS COUNTY, *by and through Roger McDaniel, Chairman, Board of Commissioners, Butts County, Georgia;* <br> CLAYTON COUNTY, *by and through Eldrin Bell, Chairman, Board of Commissioners, Clayton County, Georgia;* <br> SUMTER COUNTY, *by and through Randy Howard, Chairman, Board of Commissioners, Sumter County, Georgia;* <br> UPSON COUNTY, *by and through Maurice Raines, Chairman, Board of Commissioners, Upson County, Georgia;* <br> *And on behalf of all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY, as Conservator for Federal National Mortgage Association and Federal Home Loan Mortgage Corporation, FEDERAL NATIONAL MORTGAGE ASSOCIATION, and FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br> Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> CIVIL ACTION NO. 5:12-CV-355 (MTT) |

## ORDER

This is a putative class-action lawsuit against the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, federally chartered private corporations known more commonly by their nicknames Fannie Mae and

Freddie Mac.[1]  The Plaintiffs are local governments that wish to represent a class of all 159 Georgia counties.  They contend the Defendants' nonpayment of Georgia's Real Estate Transfer Tax[2] ("transfer tax") has unlawfully deprived them of revenue.  Fannie Mae and Freddie Mac argue that federal law exempts them from paying the tax.

These are not new accusations.  Over the past two years, local government plaintiffs in several states have brought versions of this lawsuit in their respective federal jurisdictions,[3] including in the Eastern and Western Districts of Michigan,[4] the District of Columbia,[5] the Middle District of Florida,[6] the Northern District of Illinois,[7] and the Northern and Southern Districts of Georgia.[8]  So far, the Defendants have moved to dismiss the plaintiffs' complaints in eleven of those cases.  Ten of their motions have

---

[1] The Federal Housing Finance Agency ("FHFA"), an independent federal agency, is also a named Defendant because, pursuant to 12 U.S.C. § 4617, it acts as conservator for Fannie Mae and Freddie Mac.

[2] *See* O.C.G.A. § 48-6-1.

[3] In September 2012, the United States Judicial Panel on Multidistrict Litigation considered, but denied, a request pursuant to 28 U.S.C. § 1407 to centralize this litigation in the Eastern District of Michigan.  *See In re: Real Estate Transfer Tax Litigation*, MDL No. 2394, Doc. 214 (Sept. 27, 2012).  At that time, there were nearly thirty related actions pending across the country.

[4] *Oakland Cnty. v. Fed. Hous. Fin. Agency*, 871 F. Supp. 2d 662 (E.D. Mich. 2012); *Hertel v. Bank of Am.*, 897 F. Supp. 2d 579 (W.D. Mich. 2012).  Both of these cases have been appealed to the United States Court of Appeals for the Sixth Circuit.

[5] *Hager v. Fed. Nat'l Mortg. Ass'n*, 882 F. Supp. 2d 107 (D.D.C. 2012).

[6] *Nicolai v. Fed. Hous. Fin. Agency*, ___ F. Supp. 2d ___, 2013 WL 899967 (M.D. Fla.).

[7] *Fannie Mae v. Hamer*, 2013 WL 591979 (N.D. Ill.).

[8] *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, No. 1:12-cv-2470 (N.D. Ga.); *Massey v. Fed. Nat'l Mortg. Ass'n*, No. 4:12-cv-102 (S.D. Ga.); *Johnson v. Fed. Hous. Fin. Agency*, No. 3:12-cv-68 (S.D. Ga.).

been granted.[9]  The Defendants have now moved to dismiss this case.  (Doc. 22).  Their motion is **GRANTED**.

## I.  BACKGROUND

The Plaintiffs allege the Defendants have repeatedly ignored obligations under Georgia's transfer tax, which taxes transactions involving real property.[10]  The tax must be paid to the clerk of the superior court in which the property at issue is situated "prior to and as a prerequisite to" the filing and recording of any deed or other related instrument.  O.C.G.A. § 48-6-4.  The clerk then distributes the tax revenues to the city and county where the property is located, as well as to the state.  O.C.G.A. § 48-6-8.  Fannie Mae and Freddie Mac have on numerous occasions transferred land and recorded deeds in the plaintiff counties.  (Doc. 14, ¶ 17).  However, they have either not paid or underpaid the transfer tax.  (Doc. 14, ¶ 17).  According to their recorded instruments, they have claimed state[11] and federal law[12] exempts them from paying the tax.  (Doc. 14, ¶ 19).  The Plaintiffs contend these exemptions are not valid.

---

[9] *Supra* notes 4-7.  *See also Montgomery Cnty. Comm'n v. Fed. Hous. Fin. Agency,* 2013 WL 1896256 (M.D. Ala.)**,** *Montgomery Cnty. v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1832370 (D. Md.); *Cape May Cnty. v. Fannie Mae*, No. 12-cv-4712, Doc. 37 (D.N.J. Apr. 30, 2013);  *Del. Cnty. v. Fed. Hous. Fin. Agency*, 2013 WL 1234221 (E.D. Pa.); *Hennepin Cnty. v. Fed. Nat. Mortg. Ass'n*, ___ F. Supp. 2d ___, 2013 WL 1235589 (D. Minn.); *Vadnais v. Fed. Nat. Mortg.*, 2013 WL 1249224 (D. Minn.).

[10] Pursuant to O.C.G.A. § 48-6-1:
> There is imposed a tax at the rate of $1.00 for the first $1,000.00 or fractional part of $1,000.00 and at the rate of 10¢ for each additional $100.00 or fractional part of $100.00 on each deed, instrument, or other writing by which any lands, tenements, or other realty sold is granted, assigned, transferred, or otherwise conveyed to or vested in the purchaser or purchasers, or any other person or persons by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance existing prior to the sale and not removed by the sale) exceeds $100.00.

[11] Pursuant to O.C.G.A. § 48-6-2(a)(3):

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Id.* at 1950.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.  An Exemption from "All Taxation"

When construing statutes, "the starting point…is the language of the statute itself.  If the language at issue has a plain and unambiguous meaning with regard to the

---

> The tax imposed by Code Section 48-6-1 shall not apply to:… Any deed, instrument, or other writing to which any of the following is a party: the United States; this state; any agency, board, commission, department, or political subdivision of either the United States or this state; any public authority; or any nonprofit public corporation.

Because the Court determines that federal statutes exempt the Defendants from paying the transfer tax, it does not further discuss the state exemption.

[12] Discussed *infra*.

particular dispute in the case, and the statutory scheme is coherent and consistent, the inquiry is over." *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009) (internal citations and quotation marks removed).

The Defendants assert that federal statutes exempt them from paying the transfer tax.[13]  In the case of Fannie Mae:

> *The corporation*, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, *shall be exempt from all taxation* now or hereafter *imposed by any State*, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2) (emphasis added).  Freddie Mac is granted a nearly identical exemption:

> *The Corporation*, including its franchise, activities, capital, reserves, surplus, and income, *shall be exempt from all taxation* now or hereafter *imposed* by any territory, dependency, or possession of the United States or *by any State*, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e) (emphasis added).  Federal law provides likewise for FHFA:

> *The Agency*, including its franchise, its capital, reserves, and surplus, and its income, *shall be exempt from all taxation imposed by any State*, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property,

---

[13] Congress established Fannie Mae in 1938 and Freddie Mac in 1970.  *See* 12 U.S.C. § 1701a *et seq.*; Emergency Home Finance Act of 1970, Pub. L. No. 91-351, 84 Stat. 450 (1970) (codified as amended at 12 U.S.C. §§ 1451-1459).

and the tax thereon, shall be determined as of the period for which such
tax is imposed.

12 U.S.C. § 4617(j)(2) (emphasis added).

In this case, the question is whether "all taxation" really means all taxation. "All" means, well, "all." It includes everything and everybody. To the extent it is necessary to cite authority for that proposition, that authority is in the margin.[14] Thus, the plain meaning of the statutory text is clear to this Court: Fannie Mae and Freddie Mac are exempt from any and all taxes a state might otherwise apply to them, excluding, according to the exemption's exception, taxes on real property they own.[15]

But the Plaintiffs argue the statutory scheme is rendered inconsistent by language that further addresses FHFA's liability for the actions of Fannie Mae and Freddie Mac:

> The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

12 U.S.C. § 4617(j)(4). Sections 4617(j)(2) and (j)(4) were added in 2008 when Congress passed the Housing and Economic Recovery Act (HERA), creating FHFA to operate and safeguard Fannie Mae's and Freddie Mac's assets. Pub. L. No. 110-289,

---

[14] "All" is not expressly defined in the statute, so the Court looks to the dictionary for aid in discerning the term's plain meaning. *See Koch Foods, Inc. v. Sec'y, U.S. Dept. of Labor*, 712 F.3d 476, 480 (11th Cir. 2013). "All" can mean "the whole amount or quantity of," "as much as possible," "every member or individual component of," "the whole number or sum of," "every," "any whatever," or "nothing but." *Merriam–Webster's Third New Int'l Dictionary Unabridged,* http://mwu.eb.com/mwu (Accessed April 30, 2013). As other district courts reviewing these statutes have found, the language "all taxation" "'is sweeping and unambiguous.'" *Nicolai*, 2013 WL 899967 at *3 (quoting *Hager*, 882 F. Supp. 2d at 111). "'All' is an inclusive adjective that does not leave room for unmentioned exceptions.'" *Id.* (quoting *Hertel*, 897 F. Supp. 2d at 582).

[15] This exception, or "carve out," is discussed below.

122 Stat. 2654.  Clearly, Congress enacted HERA to protect FHFA from the imploding housing market.  The Plaintiffs contend Congress would not have needed to relieve FHFA of liability for Fannie Mae's and Freddie Mac's failure to pay the transfer tax if they were in fact already exempt.  But the Defendants note that § 4617(j)(4) precludes the imposition of liability based on the conduct of "any person."  They say Congress acted to protect FHFA not from Fannie Mae's and Freddie Mac's failure to pay recording taxes, but rather from the failure of predecessor owners of property now held by Fannie Mae and Freddie Mac who did not pay the taxes and who were not exempted from payment by federal statute.  *Nicolai* and *Hertel* applied this same reasoning:

> The phrase "any person" is broader than "the Agency" or "the FHFA" or "the Enterprises."  Therefore, it does not apply solely to the FHFA's (or Freddie Mac's or Fannie Mae's) failure to pay taxes on time, but also includes non-exempt previous owners of property who may have failed "to pay taxes on real estate now owned or managed by the FHFA as conservator of Fannie Mae and Freddie Mac."  *Hertel,* [897 F. Supp. 2d at 583].  Accordingly, the provision is not rendered superfluous by the Enterprises' exemption from the Transfer Tax.

*Nicolai*, 2013 WL 899967 at *3.  This Court agrees with *Nicolai*, *Hertel*, and the Defendants, and concludes that § 4617(j)(4) does not render the overall statutory scheme incoherent or inconsistent.

Thus, the plain language of the statutory text unambiguously exempts the Defendants from paying any taxes, including Georgia's transfer tax.  This should end the inquiry.  But the Plaintiffs further suggest that "all taxation" is a term of art the United States Supreme Court has historically interpreted to mean "some, but not all, taxation." That is where the Court turns next.

### C.     The Supreme Court's Interpretation of "All Taxation"

In their briefs, the parties debate two Supreme Court cases that suggest, on the surface, conflicting answers to the question of whether "all taxation" really means "*all* taxation." Closer examination reveals no conflict once a distinction is drawn between taxation of an "entity" and taxation of "property."

The Plaintiffs rely heavily on *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988). In *Wells Fargo*, the Supreme Court considered whether public housing agency notes were exempt from federal estate taxes. *Id.* at 352. At issue was language in § 5(e) of the Housing Act of 1937, 50 Stat. 890, codified as amended at 42 U.S.C. § 1437i(b). According to that law, "obligations…issued by public housing agencies in connection with low-income housing projects shall be exempt from *all taxation* now or hereafter imposed by the United States." 42 U.S.C. § 1437i(b); *Wells Fargo*, 485 U.S. at 355 (emphasis added). Although Congress used the words "all taxation," the Court held that well before the Housing Act was passed, "an exemption of property from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." *Wells Fargo*, 485 U.S. at 355. This meaning was based on the historical distinction between an excise tax, which was levied on the *use* or *transfer* of property, and a tax levied directly *on the property itself*. *Id.* (collecting cases) (emphasis added). Excise taxes were historically permitted even though taxes levied directly on the property had been constitutionally or statutorily forbidden. *Id.* Acknowledging that estate taxes were a form of excise tax and that on the few occasions Congress exempted property from estate taxation it used specific language to do so, the Court

held the Act did not exempt public housing agency notes from the estate tax. *Id.* at 355-56, 359.

*Wells Fargo* leads the Plaintiffs to conclude the phrase "all taxation" in the Defendants' charters must refer to only direct taxation on property and not to excise taxes on the transfer of property. Further, the parties agree the transfer tax in this case is not a direct tax on real estate but an excise tax imposed on the privilege of transferring real property. (Doc. 22-1 at 12; Doc. 24-1 at 5). *See also* O.C.G.A. § 48-6-1; *Bankers Trust Co. v. Jackson*, 236 Ga. App. 490, 491 (1999). Accordingly, the Plaintiffs contend federal law does not exempt them from paying the transfer tax, despite the inclusion of the phrase "all taxation," because "all taxation" does not include excise taxes.

This Court reads *Wells Fargo* differently. The Housing Act construed in *Wells Fargo* exempted a certain type of *property* – project notes – from taxation and had nothing to do with exempting an *entity* from taxation. The Supreme Court made clear, repeatedly, that it was addressing the exemption of *property* from taxation. Thus, its holding that the "understood meaning" of an exemption of property from "all taxation" excludes an exemption from excise taxes is limited to statutory "exemption[s] of *property* from all taxation." 485 U.S. at 355 (emphasis added). Further, as the Defendants argue, this does not conflict with the plain meaning of "all taxation." Because *Wells Fargo* is confined to exemptions of *property* from all taxation, the phrase "all taxation" refers to all taxes that could be levied directly on *property*, and in that context necessarily excludes excise taxes which, by definition, are not levied directly on property but rather on conduct or privileges arising from the ownership of property.

For these reasons, all but one of the district courts to consider the Defendants' tax exempt status have rejected the Plaintiffs' interpretation of *Wells Fargo*.[16] The sole exception is *Oakland County v. Federal Housing Finance Agency*, 871 F. Supp. 2d 662 (E.D. Mich. 2012). That court, with no discussion, rejected the idea that the distinction between an exemption of property from taxation and the exemption of an entity from taxation had any significance: "The Court believes this does not make a difference." *Id.* at 669. The court in *Oakland County* was satisfied that "*Wells Fargo* is a case about the understood and long-established meaning of 'all taxation,'" and that *Wells Fargo* established that "all taxation" really meant *all taxation except excise taxes*. *Id.* This Court, like all other district courts to address the issue, does not accept this interpretation of *Wells Fargo.*

In addition, this Court believes the court in *Oakland County* misconstrued the leading Supreme Court decision on this issue, *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), which examined a Congressional tax exemption of an entity. The Federal Farm Loan Act of 1916 provided that "'every Federal land bank…, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation.'" 314 U.S. at 97 n.1 (quoting 39 Stat. 360, 380). At issue in *Bismarck* was whether this language exempted a federal land bank from paying North Dakota's state

---

[16] *See, e.g.*, *Hertel*, 897 F. Supp. 2d at 584 ("language regarding entity tax exemption does not appear in *Wells Fargo* which explicitly limited itself…to 'an exemption of property'"); *Hager*, 882 F. Supp. 2d at 112 ("*Wells Fargo*…cannot bear the weight plaintiffs would ascribe to it"); *Hamer*, 2013 WL 591979 at *6 ("*Wells Fargo* deals only with how to interpret a tax exemption on property using cases that had only considered the taxable status of exempt property"); *Nicolai*, 2013 WL 899967 at *4 ("The operative word in the Supreme Court's reasoning is 'property.'…*Wells Fargo* and the cases it relies on do not redefine 'all taxation' to mean 'some taxation but not excise taxes.'").

-10-

sales tax, a type of excise tax. *Id.* at 97. The Supreme Court declared the land bank exempt:

> The unqualified term 'taxation' used in [the act] clearly encompasses within its scope a sales tax such as the instant one, and this conclusion is confirmed by the structure of the section. In reaching an opposite conclusion the court below ignored the plain language, 'That every Federal land bank * * * shall be exempt from Federal, State, municipal, and local taxation.'

*Id.* at 99. This statutory exemption "cannot...be frittered away" by ignoring the plain language. *Id.*

*Bismarck*, unlike *Wells Fargo*, addressed the tax exemption of an entity rather than an exemption of property. Pursuant to *Bismarck*, it makes no difference whether the tax is a direct tax or an excise tax because the exemption is entity-based rather than property-based. The district courts cited above agree, and recognize that *Bismarck* rather than *Wells Fargo* controls the outcome. *See, e.g.*, *Nicolai*, 2013 WL 899967 at *5 ("*Wells Fargo* did not overturn the holding of *Bismarck*. It simply addressed a different issue. *Bismarck* holds that where an entity, not property, was exempted from taxation, the exemption also applies to excise taxes.").

The Plaintiffs dispute *Bismarck's* precedential value. They suggest its holding relies on factors other than the statute's recognition of the land bank's status as an exempt entity, particularly the Supreme Court's conclusion that land banks were federal instrumentalities constitutionally immune from taxation. The court in *Oakland County* also read *Bismarck* to rest on the land bank's status as a federal instrumentality: "[*Bismarck*] relied on the fact that the land bank was constitutionally immune from taxation due to its status as a federal instrumentality." 871 F. Supp. 2d at 670. Because there was "no suggestion here that [Fannie Mae, Freddie Mac and FHFA] are

instrumentalities of the federal government," the court in *Oakland County* apparently thought *Bismarck* inapposite. In other words, the court thought that unless an entity is performing traditional governmental functions, then Congress could not exempt that entity from taxation. This reasoning moves from the issue of statutory interpretation to constitutional authority (which is discussed below), but nevertheless it is appropriate to note here precisely what *Bismarck* held on this point.

In *Bismarck*, the "principal argument" made by the taxing entities was that Congress could not constitutionally immunize the proprietary, or nongovernmental, activities of federal land banks from state taxation. They argued Congress only had authority to extend immunity to the governmental functions of federal land banks. The Supreme Court rejected this argument.

> The federal government is one of delegated powers, and from that it necessarily follows that any constitutional exercise of its delegated powers is governmental. … It also follows that when Congress constitutionally creates a corporation through which the federal government lawful acts, the activities of such corporation are governmental.

*Bismarck*, 314 U.S. at 102. The land banks were federal instrumentalities not because they performed traditional governmental functions, but rather because "through the land banks the federal government makes possible the extension of credit on liberal terms to farm borrowers." *Id.* Thus, even though the land banks might not be performing traditional governmental functions, they nevertheless were constitutionally created and Congress, the Court held, had the power "to protect the instrumentalities which it has constitutionally created." *Id.* Thus, *Bismarck* did not hold that Congress could exempt from taxation only federal instrumentalities performing non-proprietary functions. Indeed, it rejected that proposition.

Here, Fannie Mae and Freddie Mac are "federal instrumentalities" as defined by the Supreme Court in *Bismarck*. They were created by Congress to perform functions that Congress concluded should be performed. That those functions may be outside the narrow scope of traditional governmental functions is immaterial.

Returning to the issue of statutory interpretation, the Plaintiffs disagree with drawing a distinction between the tax exemption of property and the tax exemption of entities, arguing courts have treated the two interchangeably. But the only case they cite to support this proposition is *West v. Oklahoma Tax Commission*, 334 U.S. 717 (1948), in which the Supreme Court considered whether property the United States held in trust for a deceased member of the Osage Nation was subject to the Oklahoma state inheritance tax. However, *West* is not on point because it does not address the entity-property distinction. *West* dealt with a tax on the transfer of property between the decedent and his heir and decided the heir could not benefit from the United States' tax exempt status. As *West* noted, "[i]t is the transfer of these incidents, rather than the trust properties themselves, that is the subject of the inheritance tax in question." *Id.* at 727. *West* did not hold that the United States' tax exempt status was somehow implicated or that it would not apply to the United States' benefit in another setting. 334 U.S. at 725-27. *See also Hertel*, 897 F. Supp. 2d at 585 (discussing why reliance on *West* is "misplaced").

Accordingly, this Court can only conclude that *Bismarck*, "interpreting the tax exemption of an entity rather than of a piece of property, provides the on point comparison for interpreting the statutes at issue in this case." *Hager*, 882 F. Supp. 2d at 113. Because Congress exempted the Defendants "from all taxation," the Defendants are exempt from paying the transfer tax unless an exception applies.

### D. The Real Property Exception to the Exemption

Congress has carved out an exception common to each of the Defendants that can negate their blanket exemption from all taxation. This exception generally provides that "any real property of the [Defendants] shall be subject to State, territorial, county, municipal, or local taxation to the same extent *as other real property* is taxed." *E.g.*, 12 U.S.C. § 1723a(c)(2) (emphasis added). *See also* 12 U.S.C. §§ 1452(e), 4617(j)(2). Thus, the Defendants are exempt from paying all taxes except for taxes to which real property is subject.

As discussed above, the Plaintiffs acknowledge as "undisputed" that the transfer tax is "imposed *on the privilege of transferring* real property." (Doc. 24-1 at 5) (emphasis added). Indeed, their *Wells Fargo* argument is dependent on the premise that the transfer tax is not a tax on property but rather an excise tax that should be treated like the estate tax at issue in *Wells Fargo*. That is, like the estate tax, the transfer tax is assessed against the exercise of rights by a property owner; it is not a tax on the property itself.

In recognition of the danger of inconsistent arguments, the Plaintiffs' brief relegates their carve out argument to a footnote. "Further, without contravening *Wells Fargo*," that footnote begins, Georgia's transfer tax "could" be considered a tax on property and thus within the scope of the carve out. (Doc. 24-1 at 10 n.2). But the Plaintiffs' carve out argument cannot avoid running headlong into their *Wells Fargo* argument. *Wells Fargo* makes clear, for purposes of federal tax law, that there is very much a difference between a tax on property and an excise tax. Their qualification notwithstanding, the Plaintiffs' carve out argument does "contravene" *Wells Fargo*.

Moreover, this issue was addressed in *Bismarck*. The exemption there also provided that land bank property could be taxed by the state "to the same extent…as other real property is taxed." 314 U.S. at 97 n.1. The Supreme Court concluded "[i]t cannot be seriously contended that the tax falls within the real estate exception" because the sales tax on materials to be used on the real estate was not a tax on the real estate itself. *Id.* at 101. In short, *Wells Fargo* and *Bismarck* make clear that the exception to the tax exemption in this case does not include a tax on the transfer of property.

The Court is also unconvinced by the Plaintiffs' reliance on state law to support their carve out argument. They cite Georgia law defining taxable property to include all real property and all personal property. O.C.G.A. § 48-5-3. Personal property is further defined by O.C.G.A. § 48-1-2(19) as referring to tangible and intangible personal property. Therefore, the Plaintiffs reason, the exception *could* be read to include intangible taxes such as the transfer tax. But Georgia's ad valorem taxation scheme is contained in its own chapter, entirely separate from the chapter that describes the transfer tax. Section 48-5-3 merely describes what is subject to ad valorem taxation – "all real property…and all personal property" – and has nothing to do with the transfer tax, which is governed by its own statutory scheme and which speaks to the taxation of the exercise of an ownership privilege, not the taxation of property. The Georgia Court of Appeals sums it up convincingly: "The Real Estate Transfer Tax is not a property tax; it is an excise tax on transactions involving the sale of property." *Bankers Trust Co.*, 236 Ga. App. at 491 (quoting *City of Columbus v. Ronald A. Edwards Constr. Co.*, 155 Ga. App. 502, 503, 271 S.E. 2d 643 (1980)). Thus, Georgia law does not support the

Plaintiffs' argument that the transfer tax is a tax on property,[17] and not simply an excise tax on the transfer of property.

In sum, the real property exception does not dissolve the Defendants' immunity from paying the transfer tax.

### E. Defendants as Federal Instrumentalities

Finally, at oral argument, the Plaintiffs elaborated upon an idea only hinted at in a footnote in their brief, namely that Fannie Mae and Freddie Mac are now so different in character from when they were first chartered that Congress does not have the constitutional authority to exempt them from paying state taxes. In particular, the Plaintiffs contended that because Fannie Mae and Freddie Mac are for profit corporations rather than "federal instrumentalities" entitled to constitutional tax immunity, Congress's statutory exemption of the Defendants exceeds its Commerce Clause powers and intrudes upon state sovereignty. But this argument cannot stand. It is premised on the false notion that a private entity can gain congressional exemption from state taxation only if it is a "federal instrumentality" performing traditional governmental functions, which of course is the premise rejected by *Bismarck*.

The Supreme Court reached a similar conclusion in *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339 (1968), and ruled that a federal statute

---

[17] At oral argument, the Plaintiffs also urged the Court to consider "property" in a more abstract sense. The transfer tax, counsel argued, was a tax on one stick in the "bundle of sticks" inherent in property ownership, i.e., the right to alienate property. While the transfer tax might be an "indirect tax," the Plaintiffs argued it is nevertheless a tax on property because it affects or relates to one of the sticks in the bundle, and is thus within the scope of the carve out. But this is an entirely too broad approach that eliminates the distinction between an excise tax and a property tax. Many taxes, such as the sales tax in *Bismarck* or the recording tax here, *relate* to one of the sticks in the property bundle. But, as noted above, "it cannot be seriously contended" that a tax incident to a privilege of property ownership is a tax on the property itself. 314 U.S. at 101.

was sufficient to exempt a federally created bank from paying a Massachusetts sales tax – regardless of the bank's instrumentality status. The Supreme Court found it unnecessary to even reach the constitutional question given the existing congressional legislation. 392 U.S. at 341. Other Supreme Court cases also support the notion that private entities may be shielded from paying state taxes by "constitutional immunity *or* congressional exemption." *Ariz. Dept. of Revenue v. Blaze Const. Co., Inc.*, 526 U.S. 32, 36-37 (1999) (recognizing that Congress may expressly exempt private companies from paying state taxes) (emphasis added). *See also United States v. N.M.*, 455 U.S. 720, 737-38 (1982) (recognizing same); *United States v. City of Detroit*, 355 U.S. 466, 474 (1958) (recognizing same). The Plaintiffs would like to distinguish these cases on the idea that the exempted entities were all government contractors or performing functions more closely identified with the government than Fannie Mae and Freddie Mac. But again, that is an argument for the constitutional immunity context. No constitutional immunity is necessary here, because Congress has expressly conferred immunity by statute on entities it created.[18]

Perhaps Fannie Mae and Freddie Mac have strayed from their original missions. Perhaps as a matter of public policy Congress should revisit their tax exempt status. But that, of course, would be a matter for Congress to take up.

---

[18] Because there is no doubt that Congress may by statute expressly preempt state taxes on a private entity it has created, the Plaintiffs' true bone of contention is with the scope of the Commerce Clause itself. They essentially ask the Court, based on broad principles of federalism and dual sovereignty, to read new limits into the Commerce Clause that would rein in Congressional authority to exempt private entities from state taxation. However, this Court, while respecting these principles, declines the Plaintiffs' expansive invitation to redraw the outer boundaries of Congress's commerce power.

## III. CONCLUSION

Because federal law renders the Defendants statutorily immune from paying Georgia's transfer tax, the Plaintiffs have failed to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, the Defendants' Motion to Dismiss (Doc. 22) is **GRANTED.**

**SO ORDERED**, this 14th day of May, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
